### UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CORUS STAAL BV, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE UNITED STATES, UNITED STATES )<br>DEPARTMENT OF COMMERCE, AND )<br>UNITED STATES CUSTOMS AND BORDER )<br>PROTECTION, )<br>)<br>Defendants. )<br>) | Court No. 07-00134 |

### COMPLAINT

Plaintiff Corus Staal BV ("Corus"), by and through its counsel, alleges herein as follows:

### JURISDICTION

1. This Court has jurisdiction over this action pursuant to section 1581(i) of the Customs Courts Act of 1980, 28 U.S.C. § 1581(i) (2000). The cause of action arises under the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, and 706, and title VII of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§ 1673 *et seq.* (2000).

2. Corus challenges the liquidation instructions issued by the U.S. Department of Commerce ("Commerce") to U.S. Customs and Border Protection ("Customs), dated April 16, 2007, to liquidate Corus' entries of certain hot-rolled carbon steel flat products from the Netherlands, entered from November 1, 2005 through October 31, 2006 ("POR 5"), at the as-entered rate, which includes cash deposits for antidumping duties at 4.42% *ad valorem*.

3.  Corus further challenges any actions by Customs to liquidate Corus' POR 5 entries with antidumping duties.

4.  Where a matter is not otherwise covered by 28 U.S.C. §§ 1581(a)-(h), 28 U.S.C. § 1581(i) provides this Court with exclusive jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for…(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; …[or] (4) administration and enforcement with respect to matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section…." 28 U.S.C. § 1581(i).

5.  The antidumping law provides for duties on the importation of merchandise for reasons other than the raising of revenue. The challenged actions by Defendants arise out of the antidumping law and involve the administration and enforcement of the antidumping law. Since the challenged actions do not constitute determinations reviewable under this Court's jurisdiction established at 28 U.S.C. §§ 1581(a)-(h), the Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1581(i)(2) and (i)(4).

6.  In the alternative, the challenged actions involve the administration and enforcement of the final determination made by Commerce pursuant to Section 129 of the Uruguay Round Agreements Act ("URAA"), 19 U.S.C. § 3538 (2000) ("Section 129"), <u>Certain Hot-Rolled Carbon Steel Flat Products from the Netherlands: Final Results for the Section 129 Determination</u> (Dep't of Commerce Apr. 9, 2007) ("Section 129 Determination"), <u>available at</u> http://ia.ita.doc.gov/download/zeroing/zeroing-sec-129-final-decision-memo-20070410.pdf. The Section 129 Determination is a matter referred

to in 28 U.S.C. § 1581(c). That subsection concerns any "civil action commenced under section 516A of the Tariff Act of 1930," which includes a "determination by the administering authority . . . under section 3538 of this title concerning a determination under subtitle IV of this chapter." 19 U.S.C. § 1516a(a)(2)(B)(vii) (2000). Accordingly, this Court also has jurisdiction over this suit pursuant to 28 U.S.C. § 1581(i)(4).

## STANDING

7.  Corus has standing to bring this action pursuant to 28 U.S.C. § 2631(i) (2000), which provides:

> Any civil action of which the Court of International Trade
> has jurisdiction, other than an action specified in
> subsections (a)-(h) of this section, may be commenced in
> the court by any person adversely affected or aggrieved by
> agency action within the meaning of section 702 of title 5.

Pursuant to section 702 of title 5, the Administrative Procedure Act, "[a] person suffering legal wrong because of agency action, or adversely affected by agency action within the meaning of the statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (2000).

8.  Corus manufactures, exports, and imports certain hot-rolled carbon steel flat products from the Netherlands that have been subject to an antidumping duty order. With respect to entries of such merchandise during POR 5, Corus has been required to deposit estimated antidumping duties with each such entry. Corus will be adversely affected or aggrieved by the challenged liquidation instructions and any liquidations made pursuant thereto because the instructions call for the U.S. government to keep approximately $9 million in estimated antidumping duties paid by Corus, while the entries should properly be liquidated without regard to antidumping duties.

9.  Further, Corus is an "interested party" within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3) (2000). Accordingly, it has standing to bring this action.

## TIMELINESS OF THIS ACTION

10. 28 U.S.C. § 2636(i) provides that a civil action brought under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues. Corus' cause of action accrued on April 16, 2007, when Commerce issued liquidation instructions for Corus' POR 5 entries, directing Customs to liquidate such entries with antidumping duties. Thus, this action is timely filed.

## FACTS

11. On November 29, 2001, Commerce published an antidumping duty order covering imports of certain hot-rolled carbon steel flat products from the Netherlands. See 66 Fed. Reg. 59,565 (Dep't of Commerce Nov. 29, 2001) ("Dutch Hot-Rolled Steel Order"). In the antidumping investigation that led to issuance of the order, Commerce determined that Corus sold subject merchandise at less than fair value. See Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products From The Netherlands, 66 Fed. Reg. 55,637 (Dep't of Commerce Nov. 2, 2001). This determination resulted solely from Commerce's then-current practice of zeroing (i.e., treating non-dumped sales as having zero margins instead of the negative margins found for such sales).

12. On February 16, 2004, the European Communities ("EC") requested the establishment of a World Trade Organization ("WTO") dispute settlement panel, bringing the following challenges against the use of zeroing by the United States: (1) an "as such" challenge (i.e., facial challenge) to zeroing in investigations; (2) an "as applied"

challenge to zeroing in 15 antidumping investigations, including <u>Certain Hot-Rolled Carbon Steel Flat Products From The Netherlands</u>; (3) an "as such" challenge to zeroing in administrative reviews; and (4) an "as applied" challenge to zeroing in 16 antidumping duty administrative reviews. See Panel Report, <u>United States – Laws, Regulations, and Methodology for Calculating Dumping Margins ("Zeroing")</u>, WT/DS294/R ¶¶ 1.2, 2.6, 3.1 (Oct. 31, 2005) ("<u>US-Zeroing Panel Report</u>"). Further, with respect to the 15 challenged "as applied" investigations, the EC also challenged the WTO consistency of any assessment instructions issued in the "as applied" cases pursuant to any of the challenged orders. <u>Id.</u> ¶¶ 2.6 & 2.7.

13. On October 31, 2005, the WTO panel found, inter alia, that Commerce's use of zeroing when calculating dumping margins using average-to-average comparisons in investigations was inconsistent with U.S. obligations under the WTO Antidumping Agreement, "as such" and "as applied" in the 15 challenged investigations. <u>US-Zeroing Panel Report</u> ¶¶ 7.32 & 7.106. The United States did not appeal the panel's report as to the 15 "as applied" investigations.

14. In March 2006, the United States began the process of implementing the "as applied" determinations contained in <u>US-Zeroing Panel Report</u>. It did so by initiating a proceeding under Section 123(g) of the URAA, 19 U.S.C. § 3533(g) ("Section 123"). See <u>Antidumping Proceedings: Calculation of Weighted Average Dumping Margin During an Antidumping Duty Investigation</u>, 71 Fed. Reg. 11,189 (Dep't of Commerce Mar. 6, 2006). In its March 6, 2006 notice, Commerce stated that it "will abandon" the use of zeroing in average-to-average computations of dumping margins in investigations and that it would change its margin computation methodology to bring the 15

investigations and future investigations in line with the "as applied" determinations in US-Zeroing Panel Report.

15.   The EC and the United States appealed other aspects of US-Zeroing Panel Report, which were decided by the WTO Appellate Body in United States – Laws. Regulations, and Methodology for Calculating Dumping Margins ("Zeroing"), WT/DS294/AB/R (Apr. 18, 2006) ("US-Zeroing Final Report"). The panel's "as such" and "as applied" conclusions concerning zeroing in investigations remained unchanged. On May 9, 2006, the WTO Dispute Settlement Body ("DSB") adopted the panel's report as modified by the Appellate Body report. The United States committed to implement the recommendations and rulings of US-Zeroing Final Report and emphasized that, in doing so it "has not set any 'conditions' on its acceptance of the report." Press Release, U.S. Mission to the United Nations in Geneva, U.S. Statements at the WTO Dispute Settlement Body Meeting, at 1 & 3 (May 30, 2006), available at http://www.us-mission.ch/Press2006/0531DSB.html.

16.   The United States committed to a deadline of April 9, 2007 for implementing the DSB's recommendations and rulings in US-Zeroing Final Report. Agreement Under Article 21.3(b) of the DSU, United States-Laws, Regulations, and Methodology for Calculating Dumping Margins ("Zeroing"), WT/DS294/19 (Aug. 1, 2006). With respect to the 15 "as applied" cases, for this commitment to be met, the U.S. Trade Representative needs to direct Commerce to implement the Section 129 Determination no later than April 9, 2007. Furthermore, in a June 12, 2006 submission to the DSB, the United States took the position that the Appellate Body's reasoning in US-Zeroing Final Report means that zeroing is WTO-impermissible in all antidumping

margin computations. See Communication by the United States, <u>United States -- Laws, Regulations and Methodology for Calculating Dumping Margins</u>, WT/DS294/18 ¶ 12 (June 12, 2006).

17. On December 27, 2006, Commerce published its final determination pursuant to Section 123. See <u>Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin During an Antidumping Investigation: Final Modification</u>, 71 Fed. Reg. 77,722 (Dep't of Commerce Dec. 27, 2006) ("Section 123 Determination"). The Section 123 Determination confirmed the changes in Commerce's policy in U.S. antidumping investigations – ending the use of zeroing in antidumping investigations using average-to-average comparisons. The new U.S. policy adopted as a result of the Section 123 Determination went into effect on February 22, 2007, as to all pending and future U.S. antidumping investigations.

18. On January 9, 2007, the WTO Appellate Body rejected the use of zeroing in antidumping administrative reviews on an "as such" basis. Appellate Body Report, <u>United States – Measures Relating to Zeroing and Sunset Reviews</u>, WT/DS322/AB/R (Jan. 9, 2007) ("Japan-Zeroing"). The United States has committed to implement the DSB's recommendations and rulings in <u>Japan-Zeroing</u> as well. See Press Release, U.S. Mission to the United Nations in Geneva, U.S. Statements at the WTO Dispute Settlement Body Meeting at Item 2 (Feb. 20, 2007), available at http://geneva.usmission.gov/Press2007/0220DSB.html.

19. On February 22, 2007, Commerce initiated proceedings pursuant to Section 129 to implement <u>US-Zeroing Final Report</u> as to the 15 challenged antidumping investigations. See <u>Implementation of the Findings of the WTO Panel in US Zeroing</u>

(EC): Notice of Initiation of Proceedings Under Section 129 of the URAA; Opportunity to Request Administrative Protective Orders; and Proposed Timetable and Procedures, 72 Fed. Reg. 9306 (Dep't of Commerce Mar. 1, 2007) ("Section 129 Proceeding").

20. On February 26, 2007, Commerce issued its preliminary results in the Section 129 Proceeding, including as to the investigation covering Corus' imports. See Preliminary Results for the Section 129 Determinations: Certain Hot-Rolled Carbon Steel Flat Products From The Netherlands (Dep't of Commerce Feb. 26, 2007). Commerce recalculated the dumping margins in the 15 challenged antidumping investigations without zeroing. As a result, Commerce preliminarily determined that Corus did not sell subject merchandise at less than fair value during the period of investigation, and that the Dutch Hot-Rolled Steel Order would therefore be revoked.

21. On April 9, 2007, Commerce issued its final Section 129 Determination, confirming the determination that, without zeroing, Corus did not sell subject merchandise at less than fair value during the period of investigation, and stated that the antidumping order on certain hot-rolled carbon steel flat products from the Netherlands "will be revoked." Section 129 Determination at 23. The Section 129 Determination also stated that "{b}ecause the treatment of any unliquidated entries made prior to the effective date of these determinations will not be governed by these determinations, such entries will be addressed through separate segments of these proceedings, as appropriate." Id. at 17.

22. Corus made entries of hot-rolled carbon steel flat products from the Netherlands during the period November 1, 2005 through October 31, 2006, which were subject to the antidumping order at the time of entry. Accordingly, Corus was required to

deposit estimated antidumping duties on such entries, at a rate of 4.42% *ad valorem*. This was the rate determined in the second review of the Dutch Hot-Rolled Steel Order (which review is currently subject to judicial review). Based on requests from petitioners, Commerce initiated an administrative review of Corus' POR 5 entries on December 27, 2006 (the same day that Commerce published its Section 123 Determination changing U.S. policy). Initiation of Antidumping and Countervailing Duty Administrative Reviews, 71 Fed. Reg. 77,720 (Dep't of Commerce Dec. 27, 2006).

23. On February 27, 2007, the day after Commerce issued its preliminary Section 129 determination, the petitioners submitted letters seeking to withdraw their requests for an administrative review of Corus' POR 5 entries.

24. On March 9, 2007, Corus filed an objection to petitioners' withdrawal letters, and requested that Commerce either suspend the review or refrain from issuing liquidation instructions for Corus' POR 5 entries prior to a full consideration of the effects of Commerce's Section 123 Determination and Section 129 Determination on those entries.

25. Commerce denied Corus' request and rescinded the review, stating that it would issue liquidation instructions relating to the POR 5 entries, within 15 days. See Certain Hot-Rolled Carbon Steel Flat Products from the Netherlands: Notice of Rescission of Antidumping Duty Administrative Review, 72 Fed. Reg. 15,105 (Dep't of Commerce Mar. 30, 2007).

26. In a letter dated April 11, 2007, and in light of Commerce's final Section 129 Determination, Corus renewed its request that Commerce place Corus' POR 5 entries "at a standstill." In so doing, Corus emphasized Commerce's commitment in the Section

129 Determination that the issues resolved in that determination as to imports entering after the effective date of the determination "will be addressed through separate segments of these proceedings" as to entries which, like those covered by POR 5, were "unliquidated entries made prior to the effective date" of the Section 129 Determination.

27.     As a result of Commerce's rescission of the POR 5 administrative review, on April 16, 2007, Commerce issued liquidation instructions to Customs, to liquidate Corus' POR 5 entries at the as-entered rate.

## STATEMENT OF THE CLAIM

28.     Corus herein incorporates by reference paragraphs 1 through 27, supra, of this Complaint.

## COUNT 1

29.     Corus herein incorporates by reference paragraphs 1 through 28, supra, of this Complaint.

30.     Corus challenges Commerce's liquidation instructions to Customs, and any actions taken by Customs pursuant thereto, to liquidate Corus' POR 5 entries at the as-entered rate. The as-entered rate includes deposits of estimated antidumping duties, at a rate of 4.42% *ad valorem*.

31.     On April 9, 2007, Commerce determined that the antidumping order on certain hot-rolled carbon steel flat products from the Netherlands will be revoked. This determination resulted from the fact that, in its Section 129 Determination, Commerce recalculated Corus' dumping margin from the original investigation, in accordance with current U.S. law and policy, and without zeroing negative margins. The result was a dumping margin of below zero, thereby requiring to a negative less-than-fair-value determination.

32.     As of April 9, 2007, Corus' POR 5 entries remained open and unliquidated.

33.     In the face of a negative dumping finding, Commerce can no longer lawfully order the assessment of antidumping duties. Without an affirmative finding of dumping and a valid antidumping order, any liquidation of entries with antidumping duties is unlawful. Commerce's April 16, 2007 liquidation instructions to Customs to liquidate at the as-entered rate (i.e., with antidumping duties) therefore contravene the antidumping law of the United States, sections 731 *et seq.* of the Act, 19 U.S.C. §§ 1673 *et seq.*, as do any actions taken by Customs to liquidate such entries with antidumping duties.

34.     Accordingly, Commerce's instructions to Customs to liquidate Corus' POR 5 entries with antidumping duties, and any actions by Customs pursuant thereto, are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [and] unsupported by substantial evidence." 5 U.S.C. § 706(2).

## COUNT 2

35.     Corus herein incorporates by reference paragraphs 1 through 34, supra, of this Complaint.

36.     As a result of its Section 123 Determination, Commerce changed its general policy such that it no longer uses zeroing in average-to-average comparisons in antidumping investigations. Applying current U.S. law and this new policy in the Section 129 Determination, Commerce recalculated Corus' investigation margin and determined that Corus did not sell the subject merchandise at less than fair value during the period of

investigation. In the absence of an affirmative dumping determination, Commerce has said that the order covering hot-rolled steel from the Netherlands will be revoked.

37. Actions taken by Commerce that occur subsequent to its implementation of the Section 123 Determination must be in accordance with that determination. The review covering Corus' POR 5 entries was initiated on the same day that the Section 123 Determination was published. The Section 123 Determination became effective on February 22, 2007. As of that date, the review of Corus' POR 5 entries was still active. Moreover, the antidumping investigation of Corus' imports was subject to dispute, under U.S. law, also as of February 22, 2007 (if not before then, as far back as March 6, 2006). Accordingly, not only were Corus' POR 5 entries subject to a proceeding under Section 129, they also were required to be handled consistently with U.S. law as of the time the Section 129 Determination was rendered. Under U.S. law, the recalculation of an investigation margin at a level of zero dictates revocation of an antidumping duty order *ab initio*.

38. Commerce's liquidation instructions must reflect current U.S. law, which includes Commerce practice as articulated in the Section 123 Determination, under which zeroing is not permitted in an investigation using average-to-average comparisons. In the absence of zeroing, the antidumping order against hot-rolled carbon steel flat products from the Netherlands would never have been issued. Therefore, under the current state of U.S. law, there is no legal basis to liquidate the subject entries with antidumping duties.

39. Accordingly, Commerce's instructions to Customs to liquidate Corus' POR 5 entries at the as-entered rate, and any actions by Customs pursuant thereto, are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

. . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [and] unsupported by substantial evidence." 5 U.S.C. § 706(2).

## COUNT 3

40.     Corus herein incorporates by reference paragraphs 1 through 39, supra, of this Complaint.

41.     The United States has represented to the WTO that Section 129 does not preclude Commerce from taking actions outside of a Section 129 determination, in other segments of proceedings involving the same order, which actions are consistent with or related to the Section 129 determination. Second Written Submission of the United States, United States-Section 129(c)(1) of the Uruguay Round Agreements Act, WT/DS221 ¶¶ 19, 20 (Mar. 8, 2002).

42.     Further, the United States did not appeal the WTO's inclusion of assessment instructions stemming from the investigation of hot-rolled steel from the Netherlands, as covered by the EC's successful "as applied" challenge related to the 15 challenged investigations, including the investigation covering Corus' hot-rolled steel.

43.     Moreover, in its April 9, 2007 Section 129 Determination, Commerce stated that entries predating the effective date of the Section 129 Determination "would be addressed through separate segments of these proceedings, as appropriate."

44.     Among the proceedings involved in the Section 129 Determination was the antidumping investigation covering hot-rolled steel from the Netherlands. The POR 5 administrative review is a segment of that proceeding.

45.     By issuing the challenged April 16, 2007 liquidation instructions, Commerce failed to properly and lawfully address Corus' POR 5 entries, which were

covered by a segment of the antidumping proceeding related to hot-rolled steel from the Netherlands, and which all predated the Section 129 Determination effective date, and assessments as to which were covered by <u>US-Zeroing Final Report</u>.

46.   Accordingly, Commerce's instructions to Customs to liquidate Corus' POR 5 entries at the as-entered rate, and any actions by Customs pursuant thereto, are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [and] unsupported by substantial evidence." 5 U.S.C. § 706(2).

## **COUNT 4**

47.   Corus herein incorporates by reference paragraphs 1 through 46, <u>supra</u>, of this Complaint.

48.   The 4.42% as-entered rate at which Commerce has instructed Customs to liquidate Corus' POR 5 entries was established in the second administrative review of the Dutch Hot-Rolled Steel Order, as the future cash deposit rate. See <u>Certain Hot-Rolled Carbon Steel Flat Products from the Netherlands: Final Results of Antidumping Duty Administrative Review</u>, 70 Fed. Reg. 18,366 (Dep't Commerce Apr. 11, 2005). Commerce used zeroing in that administrative review to calculate Corus' dumping margin and cash deposit rate.

49.   Commerce's determination in the second review of Corus' imports of hot-rolled steel from the Netherlands is currently subject to judicial review. The second review is also a segment of the Dutch hot-rolled steel antidumping proceeding that involves prior unliquidated entries and remains open at this time.

50.    The WTO has determined that zeroing in all antidumping proceedings is inconsistent with the Antidumping Agreement. The United States has committed to implement those rulings without conditions. The United States has explicitly characterized its understanding of Japan-Zeroing as ruling that "zeroing is always definitely prohibited in whatever context it has been presented." Communication from the United States, United States – Measures Relating to Zeroing and Sunset Reviews, WT/DS322/16 ¶ 21 (Feb. 26, 2007). Previously, in connection with the commitment to implement US-Zeroing Final Report, the United States interpreted that Appellate Body decision in the same manner: "{T}he Appellate Body . . . has prohibited zeroing in any circumstance in which a Member calculates a margin of dumping." See Communication by the United States, United States -- Laws, Regulations and Methodology for Calculating Dumping Margins ("Zeroing"), WT/DS294/18 ¶ 12 (June 12, 2006).

51.    In light of Commerce's Section 123 Determination and Section 129 Determination, Commerce's position is that zeroing is improper in investigations using average-to-average comparisons. According to the U.S. government, under the WTO rulings that it has committed to implement, if zeroing is legally impermissible in any context, it must be impermissible in all contexts. Therefore, under this principle, Commerce's Section 123 Determination and Section 129 Determination necessarily extend to prohibit zeroing in all antidumping duty administrative reviews. This is consistent with the fact that the EC's challenge to the 15 investigations, and thus the Appellate Body's "as applied" decisions as to those investigations, included assessments.

52.    Commerce is obligated not to take actions to liquidate Corus' POR 5 entries without first correcting the 4.42% deposit rate to make it consistent with current

U.S. law and the stated interpretation of the United States, and then applying that correction to Corus' POR 5 entries.

53.     Commerce's April 16, 2007 liquidation instructions direct Customs to liquidate Corus' POR 5 entries at a cash deposit rate that was calculated in a manner inconsistent with Commerce's current zeroing policy. The liquidation instructions are therefore inconsistent with Commerce's Section 123 Determination and Section 129 Determination, which both predate issuance of the instructions.

54.     Accordingly, Commerce's instructions to Customs to liquidate Corus' POR 5 entries at the zeroed as-entered rate, and any actions by Customs pursuant thereto, are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [and] unsupported by substantial evidence." 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, it is respectfully prayed that this Court: (1) hold unlawful Commerce's instructions to Customs to liquidate Corus' POR 5 entries at the as-entered rate, with antidumping duty cash deposits; (2) hold that after a negative dumping determination is rendered and/or an antidumping order is revoked pursuant to a Section 129 determination, any unliquidated entries that were subject to that order when entered must be liquidated without regard to antidumping duties; (3) order Commerce to issue instructions to Customs to liquidate Corus' POR 5 entries without regard to antidumping duties, and to refund any cash deposits paid, with interest; (4) hold that Commerce cannot liquidate Corus' POR 5 entries without first correcting the rate applicable thereto (i.e., the POR 2 deposit rate) to apply to that rate Commerce's

determination to abandon the use of zeroing; and (5) provide such other relief as this honorable Court deems proper.

Respectfully submitted,

*/s/ Alice A. Kipel*

Richard O. Cunningham
Joel D. Kaufman
Alice A. Kipel
Jamie B. Beaber

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-6743

Counsel to Corus Staal BV

Dated: April 25, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2007, copies of the foregoing Corus' Summons, Complaint, Information Statement, Disclosure of Corporate Affiliations and Financial Interest, Notice of Appearance, Motion for a Temporary Restraining Order and Preliminary Injunction to Enjoin Liquidation of Entries, Memorandum of Points and Authorities in Support of Corus' Motion for a Temporary Restraining Order and Preliminary Injunction to Enjoin Liquidation of Entries, Motion for Leave to Exceed Page Limits, and Proposed Orders, filed in <u>Corus Staal BV v. United States</u>, CIT Court No. 07-00134, were served by hand delivery, on the following parties:

<u>On Behalf of the United States</u>

Barbara S. Williams
Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. DEPARTMENT OF JUSTICE
26 Federal Plaza, Room 346
New York, NY 10278

Claudia Burke
U.S. DEPARTMENT OF JUSTICE
Commercial Litigation Branch
Civil Division
1100 L Street, NW, Room 11058
Washington, DC 20530

<u>On Behalf of the U.S. Department of Commerce</u>

John J. Sullivan
General Counsel
U.S. DEPARTMENT OF COMMERCE
14th Street and Pennsylvania Avenue, NW
Washington, DC 20230

John D. McInerney
Office of the Chief Counsel for Import Administration
U.S. DEPARTMENT OF COMMERCE
14th Street and Pennsylvania Avenue, NW
Washington, DC 20230

<u>On Behalf of the U.S. Customs and Border Protection</u>

W. Ralph Basham
Commissioner of Customs
Attn: Alfonso Robles
Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, D.C. 20229

_____
Alice A. Kipel
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 429-6743