Slip Op. 07-90

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| CORUS STAAL BV,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>                    Defendant,<br><br>     and<br><br>NUCOR CORPORATION and UNITED<br>STATES STEEL CORPORATION,<br><br>                    Defendants-Intervenor. | **Before: Gregory W. Carman, Judge**<br><br>Court No. 07-00134 |

[Plaintiff's Amended Motion for a Preliminary Injunction denied for lack of jurisdiction; case dismissed without prejudice.]

Steptoe & Johnson, LLP (Alice A. Kippel, Richard O. Cunningham, Joel D. Kaufman, and Jamie B. Beaber) for Plaintiff.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Claudia Burke); Sapna Sharma, of counsel, International Trade Administration, U.S. Department of Commerce, for Defendant.

Wiley Rein, LLP (Timothy C. Brightbill, Alan H. Price, and Maureen E. Thorson) for Defendant-Intervenor Nucor Corporation.

Skadden Arps Slate Meagher & Flom, LLP (John J. Mangan, Jeffrey D. Gerrish, Robert E. Lighthizer, and Jared Wessel) for Defendant-Intervenor United States Steel Corporation.

June 5, 2007

## OPINION

**Carman, Judge:**  This opinion follows this Court's decision from the bench on May 9, 2007,

denying for lack of jurisdiction Plaintiff's Amended Motion for a Preliminary Injunction and

dismissing the action without prejudice.  Plaintiff, Corus Staal BV ("Corus"), sought an order

enjoining the United States (the "Government") from liquidating any unliquidated entries of

certain hot-rolled carbon steel flat products ("HRCS") from the Netherlands imported by Corus

between November 1, 2005, through October 31, 2006 (referred to as "period-of-review five" or

"POR 5").

Corus, a Dutch steel manufacturer of goods subject to an antidumping order on HRCS

from the Netherlands, challenged the liquidation instructions issued by the Department of

Commerce ("Commerce") covering Corus's POR 5 entries.  Commerce issued instructions to

U.S. Customs and Border Protection ("Customs") to liquidate the relevant entries at the as-

entered rate, which included antidumping duty deposits in the amount of 4.42 percent ad

valorem.  Corus contends that the entries could not lawfully be liquidated with antidumping

duties and asks this Court to enjoin the liquidation of the entries pending final resolution of this

action.  Due to the exigencies of time in this case (Corus represented to this Court that Customs

had notified it that the entries were to be liquidated beginning on May 11, 2007), this Court

decided the motion for a preliminary injunction from the bench at the conclusion of oral

argument on Corus's motion on May 9, 2007, with opinion to follow.  This opinion explains this

Court's reasons for denying for lack of jurisdiction the motion for a preliminary injunction and

dismissing the case without prejudice in greater detail than was given on May 9, 2007.

## BACKGROUND

Commerce's now-repealed practice of zeroing in antidumping duty investigations is

central to this action.[1]  On November 29, 2001, Commerce published an antidumping order on

HRCS from the Netherlands.  Certain Hot-Rolled Carbon Steel Flat Products From the

Netherlands, 66 Fed. Reg. 59,565 (Dep't Commerce Nov. 29, 2001) (antidumping duty order).

In the antidumping duty investigation that led to the issuance of the order, Commerce determined

that Corus sold HRCS to buyers in the United States at less than fair value.  Certain Hot-Rolled

Carbon Steel Flat Products From the Netherlands, 66 Fed. Reg. 55,637 (Dep't Commerce Nov. 2,

2001) (notice of amended final determination of sales at less than fair value).  This determination

resulted solely from Commerce's practice of zeroing.  See Implementation of the Findings of the

WTO Panel in US–Zeroing (EC), 72 Fed. Reg. 25,261, 25,262 (Dep't Commerce May 4, 2007)

(notice of determinations under Section 129 of the Uruguay Round Agreements Act and

---

[1]Zeroing can best be understood in context.  To calculate a respondent's weighted-average dumping margin, Commerce does a two-step calculation.  First, Commerce calculates the dumping margin for individual transactions, whereby individual sales in the United States are compared to the normal value of the merchandise.  Corus Staal BV v. Dep't of Commerce, 395 F.3d 1343, 1345 (Fed. Cir. 2005). Normal value is the price in the respondent's home market, a third-country market, or a constructed value.  19 U.S.C. § 1677b (2000).  It is not uncommon for Commerce to find that some comparisons reveal dumping (i.e., the price in the United States is below the normal value), while others reveal no dumping (i.e., the U.S. price is higher than the normal value).  In the second step of the calculation, Commerce divides the aggregate dumping margins determined for a specific respondent by the aggregate U.S. price for that respondent. Corus Staal, 395 F.3d at 1345.  Zeroing refers to the practice of assigning a zero to a comparison that reveals no dumping, rather than a negative number equal to the amount by which the U.S. price exceeds the home market price.  Id. at 1345-46.

revocations and partial revocations of certain antidumping orders) ("Section 129 Determination")

(recalculating Corus's dumping margin as zero, in the absence of zeroing).

In 2004, the European Communities ("EC") challenged Commerce's zeroing practice at

the World Trade Organization ("WTO").  The EC alleged that the use of zeroing violated treaty

commitments made by the United States.  The EC brought both a facial challenge to the practice

of zeroing in antidumping investigations and an "as applied" challenge to the practice of zeroing

in fifteen specific antidumping investigations, including the antidumping investigation at issue in

this case.  The WTO panel found, among other things, that Commerce's use of zeroing was

inconsistent with U.S. treaty obligations, both facially and as applied to the fifteen challenged

antidumping investigations.  Panel Report, United States–Laws, Regulations, and Methodology

for Calculating Dumping Margins ("Zeroing"), WT/DS294/R, ¶¶ 7.32, 7.106 (Oct. 31, 2005)

("US-Zeroing Panel Report").

As a result of the negative WTO decision, Commerce initiated two distinct administrative

proceedings, one pursuant to section 123 of the Uruguay Round Agreements Act ("URAA"),

19 U.S.C. § 3533(g) (2000) ("Section 123"), and the other pursuant to section 129 of the URAA,

19 U.S.C. § 3538 (2000) ("Section 129").[2]  In the Section 123 proceedings Commerce

---

[2]Congress has established two procedures by which a negative WTO decision may be implemented into domestic law.  The first method, a Section 123 proceeding, is the mechanism to amend, rescind, or modify an agency regulation or practice in order to implement a decision by the WTO that such is inconsistent with U.S. treaty obligations.  19 U.S.C. § 3533.  Section 123 requires the United States Trade Representative ("USTR") to consult with appropriate congressional committees, private sector committees, and provide for public comment before determining whether and how to change an agency regulation or practice.  19 U.S.C. § 3533(g)(1).

(footnote continued)

determined that it would no longer use zeroing in antidumping investigations.  Antidumping

Proceedings: Calculation of the Weighted-Average Dumping Margin During an Antidumping

Investigation, 71 Fed. Reg. 77,722, 77,722 (Dep't Commerce Dec. 27, 2006) (final modification)

("Section 123 Determination").  Commerce stated that the new policy would apply "in all current

and future antidumping investigations as of the effective date," which was February 22, 2007.[3]

Id. at 77,725.

Commerce also initiated Section 129 proceedings through which Commerce would

recalculate the dumping margins in each of the fifteen specific antidumping investigations

challenged by the EC, without zeroing.  Implementation of the Findings of the WTO Panel in US

Zeroing (EC), 72 Fed. Reg. 9,306, 9,306 (Dep't Commerce Mar. 1, 2007) (notice of initiation of

proceedings under section 129 of the URAA).  When Commerce recalculated Corus's dumping

margin during the Section 129 proceedings, Corus's dumping margin decreased from 2.59

percent to zero.  Because Corus was the sole respondent for its particular antidumping

investigation, Commerce revoked the antidumping order on HRCS from the Netherlands.

Implementation of the Findings of the WTO Panel in US–Zeroing (EC), 72 Fed. Reg. 25,261,

---

The second method, a Section 129 proceeding, is discrete.  Section 129 sets forth a
procedure to implement a negative WTO decision with respect to a specific administrative
determination that was the subject of a WTO dispute.  19 U.S.C. § 3538.  Importantly, a Section
129 determination is prospective in nature: it becomes effective only for unliquidated entries of
merchandise that are entered or withdrawn from warehouse for consumption on or after the date
the USTR directs Commerce to implement that determination.  19 U.S.C. § 3538(c)(1)(B).

[3]The effective date was originally January 16, 2007, Section 123 Determination, 71 Fed.
Reg. at 77,725, but was later amended to February 22, 2007.  Antidumping Proceedings:
Calculation of the Weighted-Average Dumping Margins in Antidumping Investigations, 72 Fed.
Reg. 3,783, 3,783 (Dep't Commerce Jan. 26, 2007) (change in effective date of final
modification).

25,262 (Dep't Commerce May 4, 2007) (notice of determinations under section 129 of the

Uruguay Round Agreements Act and revocations and partial revocations of certain antidumping

duty orders) ("Section 129 Determination").  The effective date of the revocation was April 23,

2007.  Id. at 25,261.

        In addition to the Section 123 and Section 129 proceedings, Commerce was charged with

administering the then-existing antidumping order on HRCS from the Netherlands.  On

December 27, 2006, Commerce initiated an administrative review of the antidumping order on

HRCS from the Netherlands based on the requests of three members of the domestic steel

industry, Nucor Corporation ("Nucor"), United States Steel Corporation ("U.S. Steel"), and

Mittal Steel USA ("Mittal") (collectively "Petitioners").[4]  See Initiation of Antidumping and

Countervailing Duty Administrative Reviews, 71 Fed. Reg. 77,720, 77,720 (Dep't Commerce

Dec. 27, 2006).  The administrative review was to cover entries of subject merchandise entered

during POR 5.  Although Corus also could have requested an administrative review, it failed to

do so.  Petitioners subsequently withdrew their requests for an administrative review on February

27, 2007, within the 90-day time limit to do so established by Commerce regulations.  Certain

Hot-Rolled Carbon Steel Flat Products from the Netherlands, 72 Fed. Reg. 15,105, 15,106 (Dep't

Commerce Mar. 30, 2007) (notice of rescission of antidumping duty administrative review)

("Rescission Notice"); 19 C.F.R. § 351.213(d)(1) (2006).[5]  Also pursuant to regulation, if an

_____

        [4]Nucor and U. S. Steel intervened in this action as Defendants-Intervenor.

        [5]Commerce "will rescind an administrative review . . . if a party that requested a review
withdraws the request within 90 days of the date of publication of notice of initiation of the
requested review."  19 C.F.R. § 351.213(d) (2006).

administrative review is rescinded (or none is requested) Commerce is obligated to issue

liquidation instructions to Customs to liquidate the entries at the as-entered rate.  See 19 C.F.R.

§ 351.212(c)(i).

Corus filed an objection to Petitioners' requests to rescind the administrative review and

asked Commerce refrain from issuing liquidation instructions on Corus's entries prior to

considering the effects of the Section 123 and Section 129 proceedings.[6]  Corus argued that

Commerce was not allowed to issue liquidation instructions for Corus' POR 5 entries that

included antidumping duties because those duties were a result of zeroing.  However, Commerce

denied Corus's request and rescinded the administrative review.  Rescission Notice, 72 Fed. Reg.

at 15,106.  Following that, on April 16, 2007, Commerce issued instructions to Customs to

liquidate Corus's POR 5 entries at the as-entered rate, which included antidumping duty deposits.

Corus timely filed a request for judicial review of the liquidation instructions and a motion

requesting this Court to enjoin the liquidation of Corus's POR 5 entries.

## DISCUSSION

"Four factors are weighed in considering a motion for a preliminary injunction:

(1) immediate and irreparable injury to the movant [if an injunction is not granted]; (2) the

movant's likelihood of success on the merits; (3) the public interest; and (4) the balance of

hardships on all the parties."  U.S. Ass'n of Importers of Textiles & Apparel v. United States,

---

[6]Corus asked Commerce not to rescind the administrative review on March 9, 2007.  At that point, the Section 123 Determination, which applied to pending and new antidumping investigations, had gone into effect.  See supra n.3.  However, the Section 129 Determination, which revoked the antidumping order on HRCS from the Netherlands, had not yet been implemented.  See Section 129 Determination, 72 Fed. Reg. at 25,261.

413 F.3d 1344, 1346 (Fed. Cir. 2005) (citing Zenith Radio Corp. v. United States, 710 F.2d 806,

809 (Fed. Cir. 1983).  While no one factor is dispositive, a movant's "failure to prove likelihood

of success on the merits presents a formidable obstacle to the granting of an injunction."  FMC

Corp. v. United States, 3 F.3d 424, 431 (Fed. Cir. 1993).  In fact, absent a showing that the

movant is likely to succeed on the merits, the Court of Appeals for the Federal Circuit ("CAFC")

has questioned whether the movant can ever be entitled to a preliminary injunction absent a

showing of "extraordinary injury or strong public interest."  Id. at 427.  Here, it is the failure to

establish likelihood of success on the merits that cripples Corus's motion for injunctive relief.

I.      Corus Established That It Faces Immediate and Irreparable Injury if the Injunction is Not
        Granted.

        The first prong of the four-factor test requires a movant to demonstrate that it will suffer

immediate and irreparable harm in the absence of an injunction.  See U.S. Ass'n of Importers,

413 F.3d at 1346.  Corus asserts that it would be irreparably harmed if liquidation is not enjoined

because its "entries would be liquidated and antidumping duties would be assessed at the as-

entered rate, regardless of this Court's final judgment with respect to the [substantive] issues

raised by Corus.  As such, judicial review by this Court would be rendered meaningless, so far as

the covered entries are concerned."  (Mem. of P. & A. in Supp. of Pl.'s Mot. for a TRO &

Prelim. Inj. to Enjoin Liquidation of Entries ("Pl.'s Mem.") 12.)  In other words, Corus contends

that if liquidation is not enjoined Customs will liquidate its entries with the antidumping duties in

place and Corus will lose its opportunity to reclaim millions of dollars in deposits with respect to

those entries.

This Court agrees with Corus that it faces immediate and irreparable harm if an injunction

is not granted.  Because Commerce issued liquidation instructions for the relevant entries,

without a preliminary injunction, Customs may liquidate the entries at the as-entered rate.  Once

Customs liquidates the entries, Corus will lose its ability to challenge the correctness of the as-

entered rate.  The Zenith court explained the harm resulting to a movant from liquidation as

follows: "The statutory scheme has no provision permitting reliquidation . . . if [the movant] is

successful on the merits.  Once liquidation occurs, a subsequent decision by the trial court on the

merits of [the movant's] challenge can have no effect on the dumping duties assessed on the

[liquidated] entries." Zenith, 710 F.2d at 810.  Because Corus would not be eligible for

reimbursement of any antidumping duty deposits on the liquidated entries even if it were to

prevail on the merits, liquidation renders Corus's "statutory right to obtain judicial review . . .

without meaning." Id.  The Zenith court therefore held that "the consequences of liquidation . . .

constitute irreparable injury." Id.

While Defendants-Intervenor argue that Corus would not be irreparably injured by

liquidation, this Court rejects those arguments.  U.S. Steel argues that if Corus's entries are

liquidated with the allegedly erroneous antidumping duties in place, "Corus may be eligible for

reliquidation" pursuant to Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1312 (Fed. Cir.

2003).[7]  (Br. of Def.-Intervenor U. S. Steel Corp. in Opp'n to Pl.'s Mot. for a Prelim. Inj. & in

---

[7]In Shinyei, the plaintiff alleged that Commerce had erroneously instructed Customs to
liquidate entries contrary to the amended final results of the underlying administrative
proceeding, an antidumping duty administrative review.  Shinyei, 355 F.3d at 1303.  The plaintiff
brought suit in the United States Court of International Trade ("USCIT") seeking a writ of
mandamus to obtain immediate liquidation in accordance with the amended final results.  Id.
                                                                                    (footnote continued)

Supp. of Mot. to Dismiss 28.)  However, <u>Shinyei</u> is inapposite here; Corus's entries would not be

eligible for reliquidation.

The <u>Shinyei</u> court reaffirmed the holding from <u>Zenith</u> that reliquidation is not an available

remedy for a suit properly brought under 28 U.S.C. § 1581(c) ("section 1581(c)").[8]  <u>See</u> <u>Shinyei</u>,

355 F.3d at 1309.  As discussed below, this Court finds that Corus's action would have been

properly brought under section 1581(c).  <u>See</u> <u>infra</u> § IV.A..  Therefore, Corus cannot seek

reliquidation if its entries are liquidated at an incorrect rate.  This Court accordingly rejects U.S.

Steel's claim that the immediate liquidation Corus faces on its entries does not constitute

irreparable injury and finds that Corus has met its burden regarding this factor.[9]

_____

 While the suit was pending, Customs liquidated the plaintiff's entries.  <u>Id.</u>  The plaintiff
amended its action to seek reliquidation of the entries, but the court dismissed the action for lack
of jurisdiction.  <u>Id.</u>  The CAFC reversed, holding that liquidation did not divest the trial court of
jurisdiction over an otherwise proper action for reliquidation brought pursuant to the USCIT's
residual jurisdictional provision, 28 U.S.C. § 1581(i).  <u>Id.</u> at 1312.

[8]28 U.S.C. § 1581(c) provides exclusive jurisdiction to the USCIT over "any civil action
commenced under section 516A of the Tariff Act of 1930[, codified as amended at 19 U.S.C.
§ 1516a]."  Section 516A of the Tariff Act of 1930 provides judicial review of, <u>inter alia</u>, a final
determination in an administrative review of an antidumping order.  19 U.S.C.
§ 1516a(a)(2)(B)(iii).

[9]This Court similarly rejects Nucor's argument that Corus does not face irreparable harm
from liquidation.  Nucor contends that the harm caused by liquidation is that liquidation divests
the USCIT of jurisdiction to hear a plaintiff's case.  "However," in this instance, "an injunction
would not serve to preserve the Court's jurisdiction over Corus's claims" because Nucor alleges
that this Court currently lacks jurisdiction.  (Br. of Def.-Intervenor Nucor Corp. 27.)  Therefore,
Nucor reasons, an injunction will not prevent irreparable injury as the injury has already
occurred.  While a creative argument, this Court ultimately rejects it.  Liquidation will preclude
Corus's ability to refile suit asserting a valid basis of jurisdiction and eliminate Corus's ability to
collect the millions of dollars of antidumping deposits on its POR 5 entries if it ultimately
prevails on its substantive claims.  These effects of liquidation constitute irreparable injury.  <u>See</u>
<u>Zenith</u>, 710 F.2d at 810.

II.      The Balance of Hardships Tips in Corus's Favor.

The second factor for a court to consider when evaluating a motion for a preliminary

injunction is the balance of hardships on the parties.  Here, the balance of hardships favors

granting a preliminary injunction: the potential harm to Corus if an injunction is denied is much

greater than the harm that would be caused to the Government and Defendants-Intervenor if an

injunction is granted.  As discussed above, Corus possibly will forfeit millions of dollars in

antidumping duty deposits if Customs liquidates the entries.  Further, liquidation will eliminate

Corus's statutory right to meaningful judicial review of its substantive claims.  Therefore,

denying a preliminary injunction will likely result in great hardship to Corus.  On the other side

of the scale, the hardship to the other parties is minimal if the preliminary injunction is granted.

The Government, at most, will be inconvenienced by the delay in liquidation occasioned by the

preliminary injunction, and Defendants-Intervenor should not be impacted in any way by the

injunction.


III.     The Public Interest Slightly Favors Granting the Preliminary Injunction.

The third criterion weighed in evaluating a motion for a preliminary injunction is the

public interest.  Here, the public interest slightly favors granting the preliminary injunction.

Because "the public interest is served by ensuring that [Commerce] complies with the law, and

interprets and applies [the] international trade statutes uniformly and fairly," Ugine-Savoie Imphy

v. United States, 24 CIT 1246, 1252, 121 F. Supp. 2d 684 (2000) (internal quotation and citation

omitted), a preliminary injunction is generally in the public interest in order "to maintain the

status quo of the unliquidated entries until a final resolution of the merits."  SKF USA, Inc. v.

United States, 28 CIT __, 316 F. Supp. 2d 1322, 1329 (2004).


IV.     Corus Failed to Prove a Likelihood of Success On the Merits.

        The final factor that a party moving for a preliminary injunction must establish is

likelihood of success on the merits.  Corus argues that because it will be irreparably harmed if

this Court denies an injunction, "the requisite level of likelihood of success on the merits" that

Corus must establish "is greatly diminished."  (Supplemental Mem. in Supp. of Corus's Am.

Mot. for Prelim. Inj. ("Pl.'s Supp'l Mem.") 10.)  Corus argues that it need not "show that it is

more likely than not that it will succeed on the merits."  (Id. at 11 (emphasis added).)  Rather,

Corus argues that a preliminary injunction is warranted if Corus has "a fair chance of success on

the merits," a burden discharged by raising "serious and substantial issues."  (Id. at 12.)

        This Court agrees with Corus that it faces a reduced burden to establish a likelihood of

success on the merits.[10]  The balance of hardships tips heavily in Corus's favor: Corus will be

irreparably harmed if its entries are liquidated, while the Government will at most be

inconvenienced by the delay in liquidation caused by an injunction.

--------

        [10]The CAFC appears to have accepted a sliding scale approach regarding the standard for
likelihood of success on the merits: the greater the potential harm to the movant if the court
denies injunctive relief, the lesser the burden on the movant to make the required showing of
likelihood of success on the merits.  See Ugine & Alz BELGIUM v. United States, 452 F.3d
1289, 1293 (Fed. Cir. 2006); Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 895
(Fed. Cir. 1998) (explaining that the likelihood of success and injury prongs exist on "a
continuum in which the required showing of harm varies inversely with the required showing of
meritoriousness" (internal quotation omitted)).

> Where it is clear that the moving party will suffer substantially greater harm by
> the denial of the preliminary injunction than the non-moving part[ies] would by its
> grant, it will ordinarily be sufficient that the movant has raised serious,
> substantial, difficult and doubtful questions that are the proper subject of
> litigation.

Ugine & Alz BELGIUM v. United States, 452 F.3d 1289, 1293 (Fed. Cir. 2006) (internal

quotation omitted).  "However, the 'serious questions' must carry at least a 'fair chance of

success on the merits' in order to warrant" injunctive relief.  Mikohn Gaming Corp. v. Acres

Gaming, Inc., 165 F.3d 891, 895 (Fed. Cir. 1998) (citation omitted).

This Court finds that Corus does not meet even the reduced burden of showing that is has

a fair chance of success on the merits.  This Court lacks jurisdiction to hear Corus's case and

none of Corus's claims is likely to succeed on the merits.

### A.        Jurisdiction

"The question of jurisdiction closely affects the [movant's] likelihood of success on its

motion for a preliminary injunction."  U.S. Ass'n of Importers, 413 F.3d at 1348.  That is to say,

if jurisdiction is lacking a movant faces no likelihood of success on the merits of its claims, and,

consequently, a motion for a preliminary injunction will be denied.  Furthermore, it is essential

for a trial court to address the question of jurisdiction when deciding a motion for a preliminary

injunction as the failure to do so constitutes reversible error.  Id.

Corus claims jurisdiction pursuant to this Court's residual jurisdictional provision,

28 U.S.C. § 1581(i) (2000) ("section 1581(i)").[11]  (Compl. ¶ 1.)  Section 1581(i) may not be

---

[11]The relevant subsections of 28 U.S.C. § 1581(i) provide that

the Court of International Trade shall have jurisdiction of any civil action

(footnote continued)

invoked as the basis for jurisdiction "when jurisdiction under another subsection of § 1581 is or

could have been available, unless the remedy provided under that other subsection would be

manifestly inadequate." Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987).

Corus characterizes its case as a challenge to the issuance of liquidation instructions by

Commerce instructing Customs to liquidate Corus's POR 5 entries at the as-entered rate, which

included deposits of estimated antidumping duties.[12] (Pl.'s Supp'l Br. 4.)  However, this court

cannot merely rely on Corus's characterization of its action and must instead look to the "true

nature of the action" when determining jurisdiction.  See Norsk Hydro Can., Inc. v. United

States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (quotation and citation omitted).

This Court finds that Corus's action is not actually a challenge to the liquidation

instructions.  A challenge to liquidation instructions contends that the instructions themselves do

not accurately reflect the results of the underlying administrative proceeding.  See Shinyei, 355

F.3d at 1302-03 (allegation that liquidation instructions for plaintiff's entries did not represent

---

commenced against the United States, . . .  providing for–
. . .
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for
reasons other than the raising of revenue; [and]
. . .
(4) administration and enforcement with respect to [matters falling within the
jurisdiction of the court].

This subsection shall not confer jurisdiction over an antidumping or
countervailing duty determination which is reviewable . . . under Section 516A(a)
of the Tariff Act of 1930. . . .

[12]Challenges to liquidation instructions may be brought under section 1581(i).  See e.g.,
Shinyei, 355 F.3d at 1305; Consol. Bearings Co. v. United States, 348 F.3d 997, 1003 (Fed. Cir.
2003).

lower rate established during the administrative review); <u>Consol. Bearings Co. v. United States</u>,

348 F.3d 997, 1002 (Fed. Cir. 2003) (action seeking application of the final results of an

administrative review to the plaintiff's entries).  Here, Corus does not "claim that the

[liquidation] instructions are inconsistent with the results of the fifth administrative review."

(Pl.'s Mem. 12).  Rather, Corus claims that the dumping margin underpinning those liquidation

instructions should be different.  Specifically, Corus argues that the dumping margin and the

resulting antidumping duty deposit rate should be zero.

Where parties like Corus believe that the cash deposits of estimated duties that they pay

are not an accurate measure of the duties that should be assessed, they can request that

Commerce conduct an administrative review.  19 C.F.R. § 351.213(a), (b)(2).  Here, the only

parties to file requests for the fifth administrative review on the antidumping order on HRCS

from the Netherlands were Petitioners, Mittal, Nucor, and U.S. Steel.  Because Petitioners timely

withdrew their requests and because Corus did not file its own request for an administrative

review, Commerce's regulations required it to rescind the review.  <u>Id.</u> at § 351.213(d)(1).  Once

the review was rescinded Commerce was obligated to issue liquidation instructions to Customs

to liquidate Corus's entries at the as-entered rate.  <u>Id.</u> at § 351.212(c).

However, if Corus had filed its own request for the fifth administrative review Commerce

would have been obligated to conduct the administrative review.  Rescission is only allowed if

<u>all</u> requesting parties have withdrawn their requests within the time period allowed.  During the

administrative review, Corus could have challenged the calculation of its antidumping duty rate,

specifically Corus could have argued that Commerce was not allowed to calculate Corus's

antidumping duty rate using zeroing.  If Commerce calculated Corus's antidumping duty rate

using zeroing, Corus could have sought judicial review of that determination pursuant to section

1581(c).  In fact, Corus has challenged Commerce's use of zeroing in previous administrative

reviews, the results of which were appealed to the USCIT pursuant to section 1581(c) and then to

the CAFC.  See e.g., Corus Staal Bv v. United States Dep't of Commerce, 27 CIT 388, 395-400,

259 F. Supp. 2d 1253 (2003), aff'd, 395 F.3d 1343 (Fed. Cir. 2005), reh'g denied, 2005 U.S.

App. LEXIS 10462, cert. denied, 546 U.S. 1089 (2006).

Because section 1581(c) would have been available to Corus had it requested an

administrative review, the question for this Court becomes whether section 1581(c) is manifestly

inadequate.  See Miller, 824 F.2d at 963.  Corus does not allege, and this Court does not find,

that the remedy provided by judicial review pursuant to section 1581(c) would be manifestly

inadequate.  Accordingly, this Court finds that section 1581(i) is unavailable as a jurisdictional

basis for Corus's case.  As a result, this Court holds that Corus faces no likelihood of success on

the claims it raises because this Court lacks jurisdiction over the case.

**B.     Merits**

Even if this Court assumed that it possessed jurisdiction over Corus's action, the outcome

would be the same.  Corus is not likely to succeed on the merits of any of the four counts raised

in its complaint.

**1.     Count One**

Count One of Corus's Complaint contends that "Commerce's . . . liquidation instructions

to Customs to liquidate [the entries] at the as-entered rate (i.e., with antidumping duties) . . .

contravene the antidumping law of the United States" because there is no valid antidumping

order on Corus's entries.  (Compl. ¶ 33.)  However, this Court finds that there was a valid

antidumping order in place on HRCS from the Netherlands on April 16, 2007, the date on which

Commerce issued the liquidation instructions.  The antidumping order was revoked as a result of

Commerce's Section 129 Determination.  Section 129 Determination, 72 Fed. Reg. at 25,262.  A

determination by Commerce made pursuant to Section 129 of the Uruguay Round Agreements

Act cannot go into effect until the USTR instructs Commerce to implement the determination.

19 U.S.C. § 3538(c)(1)(B).  Here, the USTR instructed Commerce to implement the Section 129

Determination on April 23, 2007.  Section 129 Determination, 72 Fed. Reg. at 25,261.  Thus, the

antidumping order on HRCS was revoked on April 23, 2007, and until that date there was a valid

antidumping order in place.[13]

          Furthermore, the revocation did not apply to the entries at issue in this case.  Section 129

specifically says that any determination made pursuant to that provision applies prospectively,

i.e., to merchandise entered or withdrawn from warehouse for consumption on or after the date of

implementation.  19 U.S.C. § 3538(c)(1).  As stated above, the Section 129 Determination was

implemented on April 23, 2007, which means that the revocation of the antidumping order on

hot-rolled carbon steel from the Netherlands only applies to merchandise entered or withdrawn

from warehouse for consumption on or after April 23, 2007.  The entries in question in this case

were entered between November 1, 2005 and October 31, 2006.  Therefore, the implementation

---

[13]The validity of the antidumping order on HRCS from the Netherlands has been
affirmed.  Corus Staal, 27 CIT at 400, aff'd, 395 F.3d 1343 (Fed. Cir. 2005), reh'g denied, 2005
U.S. App. LEXIS 10462, cert. denied, 546 U.S. 1089 (2006).

of the Section 129 Determination on April 23, 3007 had no impact on Corus's entries that are the

subject of this litigation.  As a result, Commerce's liquidation instructions were not inconsistent

with the antidumping statute or Commerce's Section 129 Determination.

      2.      Count Two

Count Two of Corus's complaint fares no better.  Corus contends that the Section 123

Determination required Commerce to issue liquidation instructions for Corus's entries without

antidumping duties.  (Compl. ¶ 38.)  Corus argues that as a result of the Section 123

Determination Commerce was not allowed to issue liquidation instructions instructing Customs

to liquidate Corus's entries with antidumping duties.  Corus points out that "[i]n the absence of

zeroing, the antidumping order against hot-rolled carbon steel flat products from the Netherlands

would never have been issued."  (Id.)  Therefore, Corus argues, because Commerce has changed

its policy and will not now use zeroing, the basis for the antidumping order no longer exists.

To implement the WTO decision holding that zeroing was inconsistent with U.S. treaty

obligations, Commerce committed itself not to use zeroing in pending and future antidumping

investigations when calculating dumping margins using the average-to-average methodology.

Commerce announced the policy change in the Section 123 Determination.  The Section 123

Determination applies to antidumping investigations that were open on or after February 22,

2007.  Section 123 Determination, 72 Fed. Reg. at 77,725.  However, the investigation on HRCS

from the Netherlands ended well-before that, in late 2001.[14]

---

[14]Notice of the final determination in the antidumping investigation was published on
November 2, 2001.  The investigation ended before that date.  Certain Hot-Rolled Carbon Steel
Flat Products From the Netherlands, 66 Fed. Reg. 55,637 (Dep't Commerce Nov. 2, 2001)
(notice of amended final determination of sales at less than fair value).

Furthermore, this Court disagrees with Corus's contention that the antidumping

investigation was "reopened" by Commerce through the Section 129 proceedings.  (See Pl.'s

Supp'l Br. 14.)  This Court instead finds that the Section 129 proceedings were a separate

administrative action.[15]  Because the antidumping investigation on HRCS from the Netherlands

was not open on or after February 22, 2007, the Section 123 Determination does not apply to the

investigation.  Therefore, the Section 123 Determination cannot invalidate the antidumping order

on HRCS from the Netherlands.  Accordingly, Commerce's liquidation instructions were in

accordance with law.

     3.     Count Three

Count Three of Corus's complaint contends that Commerce committed itself in the

Section 129 Determination not to issue liquidation instructions in Corus's case based on an

antidumping order that was calculated using zeroing.  (Compl. ¶ 45.)  However, all Commerce

committed itself to in the Section 129 Determination said was to address cases like Corus's

(where entries predating the effective date of the Section 129 Determination were still

unliquidated) "would be addressed through separate segments of these proceedings, as

appropriate."  (Issues & Decision Mem. for the Final Results for the Section 129 Determinations,

---

[15]This Court points out that in order to participate in the Section 129 proceedings, parties
had to sign a new Administrative Protective Order.  If the Section 129 proceedings were merely a
reopening of the original investigation, it would appear that the original APO would have
sufficed.  In addition, and more importantly, Section 129 is a distinct provision of the
antidumping statute from the provisions governing original investigations.  Compare 19 U.S.C.
§ 3538 (provisions dealing with Section 129 proceedings) with 19 U.S.C. §§ 1673a-d (provisions
dealing with original antidumping duty investigations).

A-421-807, et. al, 17 (Apr. 9, 2007) (emphasis added).)  This vague statement is not grounds on

which to invalidate Commerce's liquidation instructions.

        4.       Count Four

      Finally, Count Four of Corus's complaint contends that Commerce is not allowed to use

zeroing in administrative reviews of antidumping orders.  (Compl. ¶ 51.)  During the second

administrative review, Commerce calculated Corus's dumping margin for that period using

zeroing.  The dumping margin for the second period-of-review became the deposit rate for

Corus's POR 5 entries.  Corus argues that "Commerce is obligated not to take actions to liquidate

Corus's POR 5 entries without first correcting the . . . deposit rate to make it consistent with

current U.S. law . . . , and then applying that correction to Corus's POR 5 entries."  (Compl.

¶ 52.)

      Corus's argument is unpersuasive.  Corus points to no authority for the proposition that

Commerce is not allowed to use zeroing in administrative reviews.  The Section 123

Determination only changes Commerce's practice with respect to antidumping <u>investigations</u>, not

administrative reviews.  <u>Section 123 Determination</u>, 71 Fed. Reg. at 77,722.  The courts have

affirmed Commerce's discretion to use zeroing, both in antidumping investigations and

administrative reviews.  <u>Corus Staal</u>, 27 CIT at 400; <u>Timken Co. v. United States</u>, 354 F.3d 1334,

1342 (Fed. Cir. 2004).  Therefore, unless and until Commerce changes its policy, Commerce's

use of zeroing in administrative reviews is valid under U.S. law.  <u>See</u> <u>Timken</u>, 354 F.3d at 1342.

      Corus did not persuade this Court that it possesses even a "fair chance of success,"

<u>Mikohn</u>, 165 F.3d at 895, on any of the claims in its complaint because, first, this Court lacks

Corus Staal BV v. United States                                                    Page 21
Court No. 07-00134

jurisdiction to hear Corus's case, and second, all of the claims in Corus's complaint would be

decided in favor of the Government.  As a result, Corus did not meet the burden to show a

likelihood of success on the merits.  Consequently, Corus did not establish that a preliminary

injunction was warranted under the four-part Zenith test.  See Zenith, 710 F.2d at 809.

## CONCLUSION

This Court lacks jurisdiction pursuant to 28 U.S.C. § 1581(i) to hear Corus's challenge to

the liquidation instructions issued by Commerce to Customs to liquidate Corus's entries with

antidumping duties.  Further, Corus failed to establish that it has a fair chance of success on the

merits of any of the four counts of its complaint.  Accordingly, Corus does not warrant a

preliminary injunction.  Therefore, this Court denies Plaintiff's Amended Motion for a

Preliminary Injunction and dismisses this action without prejudice.


                                              _/s/_Gregory_W._Carman____
                                               Gregory W. Carman


Dated: June 5, 2007
        New York, NY

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____

Deputy Clerk